IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 15, 2018 Session

## RICHARD ALAN ELLIS v. DONICA ANN WOODS ELLIS

**Appeal from the Circuit Court for Shelby County**
**No. CT-000806-15   James F. Russell, Judge**

_____

**No. W2017-02287-COA-R3-CV**

_____

This is an appeal from a final decree of divorce.  The trial court ordered Husband to pay Wife alimony *in futuro* in the amount of $9,000 per month.  In addition, the trial court awarded Wife her attorney's fees as alimony *in solido* in the amount of $121,873.81.  We vacate the trial court's award of alimony *in futuro* and, for the reasons stated herein, remand the issue of Wife's alimony for reconsideration.  Additionally, we vacate the trial court's award of Wife's attorney's fees and remand for the trial court to reconsider whether or not to award Wife her attorney's fees and, if so, to award a reasonable attorney's fee and state the basis for its decision.  We also vacate the trial court's order denying Wife's motion for discretionary costs, and remand the issue to the trial court for a reconsideration of Wife's motion on its merits.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated in Part and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which KENNY ARMSTRONG, J., joined. BRANDON O. GIBSON, J., NOT PARTICIPATING.

Darrell D. Blanton, Memphis, Tennessee, for the appellant, Richard Alan Ellis.

Julie C. Bartholomew, Somerville, Tennessee, for the appellee, Donica Ann Woods Ellis.

**OPINION**

### BACKGROUND AND PROCEDURAL HISTORY

Richard Ellis ("Husband") and Donica Woods ("Wife") married in Memphis, Tennessee on November 3, 1979.  Together, they have four children, one of whom was a minor child at the inception of this divorce proceeding.  Of the other three children, two lived together in Memphis, while the other lived with Wife and the minor child in the marital home.

Husband is currently a general surgeon with Methodist Medical Group. During the early years of their marriage, Wife alternated between teaching and nursing, but, after the birth of their second child, Wife quit working to take care of the children and the marital home. Wife, however, has maintained her nursing license.

After 35 years of marriage, Husband moved out of the marital home and filed for divorce on February 25, 2015 in the Shelby County Circuit Court ("the trial court"), initially alleging only irreconcilable differences. On May 8, 2015, Wife filed her answer, asserting that she was not receiving wages from employment and had no present income from wages to provide support for the parties' minor child. Accordingly, Wife asked that Husband be ordered to pay spousal and child support. Wife then filed a counter-complaint for divorce on October 18, 2016, asserting that Husband had committed adultery and that he was guilty of inappropriate marital conduct during the marriage.[1] In the alternative, Wife also asserted irreconcilable differences. Wife sought an award of alimony pendente lite from Husband during the pendency of the divorce action and, upon a final hearing, an award of alimony *in solido* and alimony *in futuro*.

Husband filed his answer to Wife's counter-complaint on November 17, 2016, wherein he admitted that he had been involved in an extra-marital affair. Husband, however, asserted that both parties had engaged in inappropriate marital conduct, and he asked that the trial court dismiss Wife's counter-complaint. Husband filed an amendment to his complaint for absolute divorce on December 5, 2016, alleging inappropriate marital conduct by Wife as an additional ground for divorce. On December 26, 2016, Wife filed her answer to Husband's amended complaint for absolute divorce, denying that she ever engaged in inappropriate marital conduct or other conduct that would serve as grounds for divorce. Additionally, as a defense to Husband's allegation of inappropriate marital conduct, Wife pleaded provocation and ill conduct on the part of Husband. Ultimately, Husband filed a stipulation as to the grounds for divorce, stating that he "stipulates to the grounds for divorce set forth in the Counter-Complaint for Absolute Divorce of [Wife], and further stipulates to the granting of a divorce to Wife."

The trial began in August 2017. Because Wife was not working at the time of trial, both she and Husband hired vocational experts to determine the amount of income Wife could expect to receive upon her return to the workplace, if she chooses to do so. Husband's expert opined that, after some nursing refresher courses and in-hospital clinical experience that would take "the better part of a year," Wife could earn at least $24.10 per hour, or $4,177 per month. Wife's expert found that Wife had left the formal labor market as a nurse in 1987 and then subsequently helped run Husband's medical office from 2012-2015. He opined that Wife could earn somewhere from $13.42 to

---

[1] In her counter-complaint, Wife also averred that the parties' minor child had reached the age of majority and was no longer a minor. Accordingly, Husband's and Wife's four children were all adults at this point in the proceedings.

- 2 -

$15.62 per hour which, using the lower wage range, would amount to $2,326 per month working as a Registered Nurse in a home health care setting, physician's office or nurse case manager.  In an affidavit, Wife affirmed that she was not earning any income at that time but had been receiving alimony pendente lite in the amount of $7,500.00 per month. The affidavit also listed Wife's total monthly expenses as $12,030.51

In its findings of fact and conclusions of law, which was entered prior to the entry of the final decree, the trial court found that Wife "is capable of earning a reasonable income as a nurse based on her education, training and background."  After addressing the expenses listed in her affidavit, the trial court further found that "the perceived monthly need on the part of [Wife]" was "something in the neighborhood of $8,000."

However, in its final decree of divorce, entered on October 23, 2017, the trial court ordered Husband to pay Wife $9,000 per month as alimony *in futuro*.  Additionally, the trial court awarded Wife alimony *in solido* in the amounts of $22,500 for repairs to the marital residence and $121,873.81 for Wife's attorney's fees.  As to the justification for the award of Wife's attorney's fees, the trial court found that "perhaps the most important point to be made is that [Wife] simply has not wanted to be divorced" and that "all of this protracted and extensive litigation conceivably was avoidable."  The final decree also provided that Husband and Wife would each be responsible for "any other fees and expenses, including expenses for experts, court reporters and such other expenses they may have incurred."

On November 14, 2017, following the entry of the final decree of divorce, Wife filed a motion for discretionary costs, stating that she had incurred a total of $5,606.25 in discretionary costs in connection with the instant litigation.  Because the trial judge who heard the prior proceedings was unavailable, the motion for discretionary costs was heard by a different judge[2] by interchange. The judge who heard the motion by interchange denied Wife's motion, stating that the trial court had "already exercised its discretion by ordering each party to pay their own costs" in the final decree of divorce and that this ruling by the trial court was *res judicata*, barring Wife's recovery of her discretionary costs.  Husband filed a timely notice of appeal on November 21, 2017. Wife, in her brief, also raised issues on appeal.

### ISSUES PRESENTED

Husband and Wife collectively raise four issues on appeal, which we rephrase as follows:
> 1. Whether the trial court erred in awarding Wife alimony *in futuro* in the amount of $9,000.00 per month.

---

[2] Judge James Russell, who had presided over the trial of the case, was on medical leave.  Circuit Court Judge Rhynette Hurd heard the motion.

2. Whether the trial court erred in awarding Wife her attorney's fees as alimony *in solido* in the amount of $121,873.81.
3. Whether the trial court erred in denying Wife's Motion for Discretionary Costs.
4. Whether Wife should be awarded her attorney's fees on appeal.

## STANDARD OF REVIEW

In non-jury cases, appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We review the trial court's resolution of questions of law de novo with no presumption of correctness. *See Armbrister*, 414 S.W.3d at 692.

A trial court's decision whether or not to award alimony and its ruling on a motion for discretionary costs are both reviewed under an abuse of discretion standard. *Cain-Swope v. Swope*, 523 S.W.3d 79, 94 (Tenn. Ct. App. 2016) ("We review an award of alimony under the abuse of discretion standard."); *Bowman v. Benouttas*, 519 S.W.3d 586, 596 (Tenn. Ct. App. 2016) ("With respect to the trial court's decision regarding . . . [a] motion for discretionary costs, we review the trial court's decision[] under an abuse of discretion standard."). Under the abuse of discretion standard, the trial court's decision "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." *Camp v. Camp*, No. W2010-01037-COA-R3-CV, 2011 WL 2567542, at *5 (Tenn. Ct. App. June 29, 2011). Accordingly, appellate courts are not permitted to "second guess" the trial court's determinations or to substitute their judgment for that of the trial court. *See Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). "The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny." *Id.*

## DISCUSSION

### Alimony *in Futuro*

The appropriateness of an award of alimony is dependent on the facts and circumstances of each case. It is well-settled in Tennessee that trial courts have broad discretion when determining whether alimony is needed and, if so, the amount, duration, and nature of the award. *Gladwell v. Gladwell*, No. W2014-01095-COA-R3-CV, 2015 WL 4400127, at *6 (Tenn. Ct. App. July 20, 2015). By statute, trial courts are directed to consider the following factors when determining whether alimony is appropriate and in determining the nature, amount, length of term, and manner of payment:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i). It is well-settled that the disadvantaged spouse's need and the obligor spouse's ability to pay are the most important among these factors. *Riggs v. Riggs*, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007). Ultimately, however, "the disadvantaged spouse's need is the threshold consideration." *Id.* (citations omitted).

Tennessee Code Annotated section 36-5-121(d)(1) lists the four types of spousal support that are recognized under Tennessee law: (1) alimony *in futuro*; (2) alimony *in solido*; (3) rehabilitative alimony; and (4) transitional alimony. Relevant to the case at bar is the trial court's award of alimony *in futuro*, which, as defined by the statute, is "a payment of support and maintenance on a long term basis" and "may be awarded when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible[.]" Tenn. Code Ann. § 36-5-121(f)(1).[3] Husband asserts that the trial court erred

---

[3] The trial court also awarded Wife attorney's fees, which is considered a form of alimony *in solido* and is discussed below.

by awarding wife alimony *in futuro* in the amount of $9,000 per month. In support of this award, the trial court offered the following in its findings of fact and conclusions of law:

> [H]ere we look first to the claimed "need" as set forth in the wife's Rule 14(C) affidavit and the body of proof as a whole. It should be noted that she has no mortgage at this time, contrary to that which is shown in the proposal of $1,849 per month. She has a house full of furniture, and there is no "need" of $495 per month for "home furnishing." And while she may need to replace her automobile at some point in the future, she has no present monthly ongoing "need" at the level of $833.33 per month for car replacement.
>
> . . . .
>
> Continuing on, these three items total some $3,077[4] when added together. When subtracted from the total set forth in the wife's Rule 14(C) affidavit in the amount of $12,030.51, the difference is, according to the Court's mathematics, eight thousand nine hundred and fifty-three dollars and change.[5] In addition the wife shows some $480 for a "handyman," an additional $260 for "housekeeping," and an additional $600 for "miscellaneous repairs," all of which added together comes to a total of $1,340. There frankly is no evidence in this record to support such needs. Moreover, it should be noted that three of the parties' four children still live at home and, as mentioned in the statute, conceivably could fill some of those needs. In any event, all of that would *reduce the perceived monthly need on the part of the spouse down to something in the neighborhood of $8,000*.
>
> Again, considering the whole body of proof and the statutory provisions which the Court has laboriously outlined, the Court is drawn to a conclusion, taking all of those factors into account as set forth in the statute, that an appropriate award of *$9,000* per month in spousal support is a fair and just alimony in futuro award under all of the facts and circumstances of this case as they presently exist.

(emphasis added)

After our review of the record, we are of the opinion that the trial court's alimony *in futuro* award should be vacated and remanded for reconsideration. First, as noted in

---

[4] This Court made the same calculations and reached a total of $3,177.
[5] Again, this Court reached a similar, yet different result: $8,853.18.

- 6 -

the portion of its findings of fact and conclusions of law reproduced above, the trial court, without further explanation, awarded Wife $9,000 per month of alimony *in futuro*, notwithstanding its finding that Wife's monthly need was "something in the neighborhood of $8,000." Moreover, the trial court, in making its alimony award, failed to consider its other findings that Wife could "reasonably re-enter the employment market" and "is capable of earning a reasonable income as a nurse based on her education, training and background" even though Wife stated she had no intention of returning to work. The trial court based these findings on the reports and testimony provided by both Husband's and Wife's vocational experts. Husband's expert testified at trial and provided in his report that, if Wife re-entered the employment market as a registered nurse, she could earn at least $24.10 per hour or $4,177 per month in income. Wife's expert testified that Wife could earn at least $13.42 per hour or $2,326 per month.[6] In determining the amount of alimony *in futuro* to award Wife, however, the trial court did not factor in these wage ranges provided by both parties' experts, despite the fact that the relative earning capacity of both parties is one of the statutory factors the trial court must consider when calculating such an award. *See* Tenn. Code Ann. § 36-5-121(i)(1). This Court has observed that, after the trial court has determined an amount of income "which will provide for the wife to live in the manner to which she became accustomed during the marriage[, f]rom this amount should be subtracted her reasonably anticipated income[.]" *Duncan v. Duncan*, 686 S.W.2d 568, 572 (Tenn. Ct. App. 1984).

In addition to the above considerations, which should have been taken into consideration by the trial court, we are compelled to note that the nature of the alimony awarded was itself without a proper factual foundation. Namely, it does not appear that the trial court ever specifically found that Wife's economic rehabilitation was not feasible. In a recent decision, we vacated an award of alimony *in futuro* where such a finding was absent:

[W]e again note that there is a "legislative preference favoring short-term spousal support over long-term spousal support." In fact, in order for a trial court to award alimony *in futuro*, "there must be a threshold determination by the trial judge that, considering all relevant factors, rehabilitation of the economically disadvantaged spouse is not feasible." Here, the trial court's decision to award alimony *in futuro* is not accompanied by this necessary determination. Because there is no finding that economic rehabilitation is not feasible and there is no finding that long-term support is necessary, the trial court's decision is without a proper foundation. Very simply, there is an absence of an explanation regarding the trial court's decision to award *in futuro* support in light of the pertinent statutory factors.

\*\*\*\*

---

[6] In fact, Wife's expert opined that the low wage range for a registered nurse in the Memphis, Tennessee area is even higher at $15.62 per hour—or $32,490 per year.

For the foregoing reasons, we vacate the award of . . . alimony *in futuro* and remand for a reconsideration of the type, duration, and amount of alimony, if any, that is to be awarded. First and foremost, the trial court should make factual findings as to Wife's need for support and Husband's ability to pay. Because there is a legislative preference towards awarding rehabilitative or transitional alimony over alimony *in futuro* or *in solido*, the court should also make findings as to whether Wife's rehabilitation is feasible. If not, the trial court should consider whether an award of transitional alimony is appropriate. If transitional alimony is not appropriate, the trial court should consider the nature and duration of long-term support.

*Buntyn v. Buntyn*, No. W2016-00398-COA-R3-CV, 2017 WL 781724, at *3–4 (Tenn. Ct. App. Feb. 28, 2017) (internal citations omitted).

Here, the trial court should reconsider the alimony issue in light of the above discussion. The trial court, of course, is not foreclosed from awarding Wife long-term support, but any such award should be supported by proper findings and consideration of the relevant alimony factors. In reference to Wife's needs, we again note that the trial court's own findings established that Wife's needs are "something in the neighborhood of $8,000." We further reiterate that the trial court must consider the evidence regarding the range of Wife's reasonably anticipated income. We, therefore, vacate the trial court's award of alimony *in futuro* and remand the issue for further proceedings consistent with this opinion.

## Attorney's Fees

It is well-settled that an award of attorney's fees in a divorce case constitutes alimony *in solido*. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 113 (Tenn. 2011); *see also* Tenn. Code Ann. § 36-5-121(h)(1) ("[A]limony in solido may include attorney fees, where appropriate[.]"). The decision whether or not to award attorney's fees is within the sound discretion of the trial court. *Gonsewski*, 350 S.W.3d at 113 (citing *Crabtree v. Crabtree*, 16 S.W.3d 356, 361 (Tenn. 2000)). As with any alimony award, in deciding whether to award attorney's fees as alimony *in solido*, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i), provided above. Moreover, such an award is only appropriate when the spouse seeking it lacks sufficient funds to pay his or her legal expenses or would be required to deplete his or her resources in order to pay them. *Id.* (internal citations omitted).

Here, in its final decree, the trial court awarded Wife her attorney's fees in the amount of $121,873.81. In his brief on appeal, Husband points to the trial court's lack of findings on this issue: "The Trial Court did not find that Wife did not have the ability to

pay the fees. The Trial Court did not find that Husband had the ability to pay the fees. The Trial Court simply ordered it." In its oral findings of facts and conclusions of law, the only finding/comment that the trial court stated in support of its award is as follows:

> [T]he most important point to be made is that the wife simply has not wanted to be divorced. This appears to be so in spite of the husband's admitted marital infidelity. That being so, all of this protracted and extensive litigation conceivably was avoidable.

> The Court accordingly is compelled to a conclusion that the wife's fees as set forth in her amended affidavit should be awarded to her and the husband ordered to pay it according to that affidavit.

After our review of the record, we are of the opinion that the trial court failed to consider the factors set forth in Tennessee Code Annotated section 36-5-121(i) in determining whether or not to award Wife her attorney's fees. Moreover, a trial court evaluating the reasonableness of an award of attorney's fees must consider the factors provided in Tennessee Supreme Court Rule 8, RPC 1.5. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 185 (Tenn. 2011). That rule provides, in pertinent part, as follows:

> (a) The factors to be considered in determining the reasonableness of a fee include the following:
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
> (8) whether the fee is fixed or contingent;
> (9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
> (10) whether the fee agreement is in writing.

Tenn. Sup. Ct. R. 8, RPC 1.5(a). In *Wright,* the Tennessee Supreme Court provided additional guidance:

> [T]he trial court should develop an evidentiary record, make findings concerning each of the factors, and then determine a reasonable fee that "depend[s] upon the particular circumstances of the individual case." To

- 9 -

enable appellate review, trial courts should clearly and thoroughly explain the particular circumstances and factors supporting their determination of a reasonable fee in a given case.

*Wright*, 337 S.W.3d at 185-86 (citations omitted). This Court has remanded numerous cases for reconsideration when a trial court has not followed this prescribed procedure. For example, in *First Peoples Bank of Tennessee v. Hill*, we stated:

Where a trial court awards a fee, but there is nothing in the record to indicate that the trial court actually evaluated the amount of the fee to see if it is reasonable in light of the appropriate factors, the correct approach is to vacate the award and "remand [the] case to the trial court for a new determination of an attorney's fee award under [Supreme Court Rule 8, RPC 1.5] and the applicable case law."

*First Peoples Bank of Tennessee v. Hill*, 340 S.W.3d 398, 410 (Tenn. Ct. App. 2010) (citations omitted).

Here, the trial court did not make a finding of reasonableness, nor did it refer to Rule 1.5 or any of its factors; it simply awarded Wife an amount of fees with no further findings or explanation. Accordingly, we vacate the trial court's award of attorney's fees and remand for a new determination as to whether Wife should be awarded her attorney's fees and, if so, the reasonableness of such fee award, with findings by the trial court reflecting that it considered all of the factors outlined above and the applicable case law. On remand, the trial court may re-open the proof as to this issue, if it chooses to do so.

Wife also requests attorney's fees on appeal. "Whether to award attorney's fees on appeal is a matter within the sole discretion of this Court." *Luplow v. Luplow*, 450 S.W.3d 105, 119 (Tenn. Ct. App. 2014). In determining whether to award attorney's fees on appeal, we consider the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that should be considered. Taking these factors into consideration, we decline to award Wife her attorney's fees on appeal.

**Wife's Motion for Discretionary Costs**

Following the entry of the final decree of divorce, Wife filed a motion for discretionary costs on November 14, 2017, stating that she had incurred $5,606.25 in discretionary costs in connection with the instant litigation. Prior to the filing of Wife's motion, however, the trial court—in both its findings of fact and conclusions of law and its final decree—had stated that "[e]ach of the parties will be responsible for any other fees and expenses, including expenses for experts, court reporters and such other expenses they may have incurred." On March 9, 2018, the trial court—with a different

judge sitting by interchange—denied Wife's motion, stating that "the Trial Court had already exercised its discretion by ordering each party to pay their own costs as found in Paragraph 11 of the Final Decree, which ruling is *res judicata*, barring [Wife's] recovery under Rule 54.04." Wife argues that the trial court erred in ruling on Wife's motion for discretionary costs in advance of her filing such a motion. We agree.

Although Tennessee Rule of Civil Procedure 54.04 provides that "[c]osts not included in the bill of costs prepared by the clerk are allowable only in the court's discretion[,]" the rule further provides that "a party requesting discretionary costs shall file and serve a motion within thirty (30) days after entry of judgment." Tenn. R. Civ. P. 54.04(2). The record shows that Wife timely filed her motion.[7] We are of the opinion that the trial court, in both its findings of facts and conclusions of law and final decree, in effect, denied Wife her discretionary costs before a motion for such costs was even before it. Then, after Wife filed her motion, the trial court—with a different judge sitting by interchange—denied it on the grounds of *res judicata*. We conclude that the trial court's March 9, 2018 order denying Wife's motion for discretionary costs was improper because the trial court's initial denial of such costs in its findings of fact and conclusions of law and final decree was premature. As such, Wife's motion was never adjudicated on the basis of its merits, or lack thereof. Accordingly, we vacate the trial court's order denying Wife's motion for discretionary costs and remand the issue to the trial court for a consideration of the motion on its merits.

## CONCLUSION

We vacate the trial court's October 23, 2017 judgment as it pertains to its awards to Wife of alimony *in futuro* and attorney's fees as alimony *in solido,* and we remand the case to the trial court for further proceedings consistent with this opinion. Additionally, we vacate the trial court's March 9, 2018 order denying Wife's motion for discretionary costs, and we remand the issue to the trial court for a consideration of the motion on its merits.

_____

ARNOLD B. GOLDIN, JUDGE

---

[7] The trial court entered its final decree on October 23, 2017. Wife filed her motion for discretionary costs on November 14, 2017, within the thirty day window provided in Rule 54.04.